NPC v. International Precast Supply   CV-03-029-JM  09/28/04  P

## UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF NEW HAMPSHIRE

NPC, Inc.

    v.                                    Civil No. 03-029-JM
                                           Opinion No. 2004 DNH 142
International Precast Supply, Inc.


**O R D E R**


NPC, Inc. ("Plaintiff") owns United States Patent No.
5,431,459 (the "'459 patent") for a wedge expander for increasing
the circumference of a circular clamping band.  It sued
International Precast Supply, Inc. ("Defendant") alleging that
Defendant's device infringes the '459 Patent under the doctrine
of equivalents.  Defendant moves for summary judgment on the
grounds that Plaintiff is estopped from asserting a doctrine of
equivalents infringement against Defendant because of prosecution
history estoppel.  Plaintiff filed an objection.  For the reasons
set forth below, Defendant's motion is granted.

<u>Standard of Review</u>

Summary Judgment is appropriate only "if the pleadings,
depositions, answers to interrogatories, and admissions on file,
together with the affidavits, if any, show that there is no
genuine issue as to any material fact and that the moving party

is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A genuine issue is one "that properly can be resolved only by a finder of fact because [it] . . . may reasonably be resolved in favor of either party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986).  A material fact is one that affects the outcome of the suit.  See id. at 248.

"Summary judgment is a procedure that involves shifting burdens between the moving and the nonmoving parties."  LeBlanc v. Great Am. Ins. Co., 6 F.3d 836, 841 (1st Cir. 1993).  The moving party bears the initial burden of establishing that there is no genuine issue of material fact.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  If that burden is met, the opposing party can avoid summary judgment only by providing properly supported evidence of disputed material facts that would require trial.  Id. at 324.  Evidence that is "merely colorable, or is not sufficiently probative" will not preclude summary judgment.  Anderson, 477 U.S. at 249-50 (citation omitted); see also, LeBlanc, 6 F.3d at 842 ("the nonmoving party must establish a trial-worthy issue by presenting enough competent evidence to enable a finding favorable to the nonmoving party.").

In considering a motion for summary judgment, the court

2

construes the record in the light most favorable to the non-moving party, resolving all inferences in its favor, and then determines whether the moving party is entitled to judgment as a matter of law. Carroll v. Xerox Corp., 294 F.3d 231, 237 (1st Cir. 2002). The court does not likewise credit the nonmoving party's "conclusory allegations, improbable inferences, and unsupported speculation." Medina-Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990). Applying the standard for a motion for summary judgment, the facts are recited below.[1]

## Background

### I. Claimed Invention

The '459 patent covers an improved clamping device for effecting a seal between a sewer pipe and a manhole riser. The claimed wedge expansion mechanism includes two wedge followers and two driving wedges. Generally speaking, these wedges have a trapezoidal shape. The wedge followers each have a shank portion that is inserted into an end section of a circular clamping band.

---

[1]Defendant relies upon the Declaration of Michael R. Reinemann dated December 9, 2003 ("Reinemann Decl."), and attached undisputed exhibits, in support of its motion. The exhibits include excerpts from the prosecution history of the '459 patent before the Patent and Trademark Office ("PTO") and decisions from this District Court. To support its objection, Plaintiff submitted the Affidavit of Michael S. Owen dated January 27, 2004 ("Owen Aff.") and attached undisputed exhibits.

3

The driving wedges have angled edge sections that are formed as U-shaped channels (i.e., grooves) that engage and capture the angled, planar edges (i.e., tongues) of the wedge followers.

A bolt extends through saddles on the driving wedges and engages a nut. When the bolt is tightened the driving wedges are drawn closer together. Because the edges of the followers and driving wedges are at an angle, when the driving wedges are drawn together, the followers are forced further apart, thereby expanding the circumference of the clamping band.

II. Prosecution History

The history of the '459 patent includes three related patent applications. The first application (the "Parent Application") was filed on February 8, 1991. Plaintiff filed a continuation application on July 23, 1992 (the "Continuation Application") and abandoned the Parent Application. On March 19, 1993, Plaintiff filed a third application (the Continuation-in-Part or "CIP Application") and abandoned the Continuation Application. The CIP Application matured into the '459 patent, which issued on July 11, 1995 with 39 claims.[2]

_____

[2] "The function of claims is (a) to point out what the invention is in such a way as to distinguish it from what was previously known, i.e., from the prior art; and (b) to define the scope of protection afforded by the patent. In re Vamco Mach. &

4

A.    Parent Application

Originally, claim 1 of the Parent Application contained the following text:

> A. first and second planar follower means for insertion in the first and second end sections, respectively, along the center line, each of said follower means having edges that diverge with respect to the center line,
>
> B. first and second wedge means lying along an axis that is transverse to the center line for controlling the separation of said follower means, each of said first and second wedge means being spaced from the center line and having edge means that diverge with respect to the transverse axis and spaced saddle means located along the transverse axis, . . .

Reinemann Decl., Ex. C. at 15 (emphasis added).  As recited, Plaintiff did not limit the edge of the follower means or of the wedge means to any particular shape or configuration.  Thus, original claim 1 was broad enough to cover a wedge expander in which either the tongues were on the followers and the grooves were on the wedge, or alternatively in which the tongues were on the wedges and the grooves were on the followers.

The patent examiner rejected all of the then-pending claims. Reinemann Decl., Ex. E.  Claim 1, in particular, was rejected under 35 U.S.C. § 102(b) as being clearly anticipated by a prior

_____

Tool, Inc., 752 F.2d 1564, 1577 n.5 (Fed. Cir. 1985) (emphasis in original).

5

art wedge expander.[3]  Id. at 2.  There is no evidence that Plaintiff either argued that original claim 1 was distinguishable over the prior art, or that Plaintiff appealed the examiner's decision to the Board of Patent Appeals and Interferences.

In response to the examiner's action, Plaintiff withdrew claim 1 and presented new claims 18 and 19 to the examiner during an interview.  The new claims provided in relevant part:

> A. first and second integral, thin planar follower means each having a shank portion for being inserted along the center line into an end section of the clamping band and a trapezoidal head portion with a base that overlies the end section and with the divergent planar edge portions constituting the sides of the trapezoid, each said follower means being deformable to conform to a radius of curvature along the center line corresponding to the nominal radius of curvature whereby said follower means can conform to the profile of the clamping member,
>
> B. first and second integral wedge means lying along an axis that is transverse to the center line for controlling the separation of said follower means, each of said first and second wedge means being spaced from the center line, having U-shaped edge means that diverge with respect to the transverse axis and that parallel said follower means edge portions for engaging said edge portions and having spaced saddle means located along the transverse axis and each said wedge means being deformable to conform to a radius of curvature about the transverse axis corresponding to

---

[3]The prior art wedge expander was one of Plaintiff's devices that pre-dated the Parent Application, thus making the earlier wedge expander prior art against the patent.  See Reinemann Decl., Ex. D at 25.

the nominal radius of curvature whereby said wedge
means can conform to the profile of the clamping
member, . . .

Reinemann Decl., Ex. F. (emphasis added). Thus, new claims 18

and 19 of the Parent Application (hereinafter referred to only as

"claims 18 and 19") rewrote original claim 1 to include, among

other things, "planar edge portions," i.e., the tongues, to be

located on the followers, and for the "U-shaped edge means,"

i.e., the grooves, to be located on the wedges. The examiner

agreed that the new claims overcame the prior art of record. Id.

On April 9, 1992, Plaintiff submitted an Amendment Under 37

C.F.R. 1.111 formally presenting claims 18 and 19. Reinemann

Decl., Ex. G. Plaintiff stated in the Remarks section that the

followers described in those claims have: "'divergent planar edge

portions' and is 'deformable to conform' to the radius of the

clamping band," and that "[t]he prior art of Fig. 3 shows a

channel-like edge portions for the followers that interferes with

the ability to the deform (sic) the follower to conform to the

profile of the clamping band." Id. at 11 (emphasis added).

Plaintiff further stated that, "Claims 18 and 19 also require

that the wedge means have U-shaped edge means that diverge for

engaging the edge portions." Id. at 12 (emphasis added). This

7

was indicated to be in contrast with "the prior art Fig. 3 [which] discloses the U-shaped channels on the followers and a planar edge on the wedge structure." Id.

B. Continuation Application

On July 23, 1992, Plaintiff filed the Continuation Application and abandoned the Parent Application. Reinemann Decl., Ex. H. Plaintiff did not present the claims that the patent examiner found allowable in the Parent Application. Rather, claim 1 of the Continuation Application stated in relevant part:

A. first and second integral, thin planar follower means each having a shank portion for being inserted along the center line into an end section of the clamping band and a trapezoidal head portion with a base that overlies the end section and with the divergent planar edge portions constituting the sides of the trapezoid, each said follower means being deformable to conform to a radius of curvature along the center line corresponding to the nominal radius of curvature whereby said follower means can conform to the profile of the clamping member,

B. first and second integral wedge means lying along an axis that is transverse to the center line for controlling the separation of said follower means, each of said first and second wedge means being spaced from the center line and having edge means that diverge with respect to the transverse axis and that parallel said follower means edge portions for engaging said edge portions and having saddle means located along the transverse axis and each said wedge means being deformable to conform to a radius of curvature about

8

the transverse axis corresponding to the nominal radius
of curvature whereby said wedge means can conform to
the profile of the clamping member, . . .

Reinemann Decl., Ex. H at 16-17 (emphasis added). Although claim 1 of the Continuation Application states that the followers have "planar edge portions," it only refers to the wedges as "having edge means." Upon review, the examiner rejected claim 1 under 35 U.S.C. § 102(b) "as being clearly anticipated by applicant's prior art fig. 3." Reinemann Decl., Ex. I at 2. There is no evidence that Plaintiff responded to the examiner's rejection of the Continuation Application.

C.   CIP Application

Plaintiff subsequently filed its CIP Application and abandoned the Continuation Application. Reinemann Decl., Ex. J. The CIP Application includes material presented in the Parent and Continuation Applications, but also includes new material not included in the earlier applications.

Claim 1 of the CIP Application states in relevant part:

A. first and second integral follower means each
having a shank portion for being inserted along the
center line into a corresponding end section of the
clamping member and a trapezoidal head portion with a
base for overlying the end section and with the
divergent planar edge portions constituting the sides
of the trapezoid, each said follower means having an
outer surface that corresponds to the nominal radius of

9

curvature,

B. first and second integral wedge means adapted for lying in a spaced relationship along an axis that is transverse to the center line to control the separation of said follower means, each of said first and second wedge means having a generally trapezoidal shape with edge means that diverge with respect to the transverse axis, that parallel said follower means edge portions and that terminate with outwardly facing open channel means for receiving said follower means planar edge portions, and having an outer surface for disposition about the transverse axis corresponding to the nominal radius of curvature, . . .

Reinemann Decl., Ex. J at 27-28 (emphasis added). Claim 25 was first presented in the CIP Application. In addition to reciting that the expansion means had tongues located on the followers and the grooves on the wedges, claim 25 included as an element that the wedges are made out of plastic. As filed in the CIP Application, claim 25 provided in relevant part:

A. first and second integral follower means each having a shank portion for being inserted along the center line into a corresponding end section of the clamping member and a trapezoidal head portion with a base that overlies the end section and with the divergent planar edge portions constituting the sides of the trapezoid, each of said edge portions including a tongue extending therefrom and each of said follower means having an outer surface that corresponds to the nominal radius of curvature,

B. first and second integral plastic wedge means adapted for lying, in a spaced relationship along an axis that is transverse to the center line to control the separation of said follower means, each of said

10

> first and second wedge means having a generally
> trapezoidal shape with edge means that diverge with
> respect to the transverse axis, that parallel said
> follower means edge portions and that terminate <u>with</u>
> <u>outwardly facing grooves</u> for receiving said tongues on
> said follower means and having an outer surface for
> disposition about the transverse axis that corresponds
> to the nominal radius of curvature, . . .

Reinemann Decl., Ex. J. at 38-39 (emphasis added).

In an Office Action mailed on January 7, 1994, the patent examiner rejected claim 1 of the CIP Application. Reinemann Decl. Ex. K at 3. Unlike the earlier rejection of original claim 1 of the Parent Application, which was based on anticipation by the prior art wedge expander, this time the examiner found that claim 1 of the CIP Application was obvious in light of the prior art under 35 U.S.C. § 103. The examiner wrote:

> The fig. 3 clamping system illustrates all the features
> of the present invention except the channels are on the
> follower means and not the wedge means. It would have
> been obvious to one of ordinary skill in the art at the
> time the invention was made to switch the channels from
> the follower means to edge means as such is considered
> to be a mere reversal of parts which does not
> patentably define over the prior art of record since no
> new or unexpected results occur from moving the
> channels from the follower means to the wedge means.

Reienmann Decl. Ex. K at 3. In that same Office Action, the patent examiner rejected claim 16 as being clearly anticipated by the prior art. <u>Id.</u> at 2. The examiner also rejected claims 1,

11

16, and 25 under 35 U.S.C. § 112 finding that they were indefinite for failing to particularly point out and distinctly claim the subject matter regarded as the invention. Id. Specifically, the examiner found that it was unclear "what the wedge means are 'integral' with." Id. Before concluding, the examiner stated that claim 25 "would be allowable if rewritten or amended under 35 U.S.C. § 112." Id. at 4.

Plaintiff next submitted an Amendment Under 37 C.F.R. 1.111, which amended some of the language used in the CIP Application, and which challenged the patent examiner's findings on certain claims. Reinemann Decl., Ex. L. Plaintiff amended claims 1 and 16 by replacing the original language of "first and second integral follower means" with "first integral follower means and second integral follower means," and by replacing the original language of "first and second integral wedge means" with "first integral wedge means and second integral wedge means." Id. at 1-9. Similarly, Plaintiff amended claim 25 by replacing the original language of "first and second integral follower means" with "first integral follower means and second integral follower means" and by replacing the language of "first and second integral plastic wedge means" with "first integral plastic wedge

12

means and second integral plastic wedge means." Id. at 6. In the Remarks section, Plaintiff explained that "Claims 1, 16 and 25 have been amended to clarify that each of the wedge means is integral with itself and, likewise, that each of the follower means is integral with itself." Id. at 9-10.

Plaintiff then made the following argument for why claim 1 should not be considered obvious based upon the prior art:

> Applicant respectfully submits that FIG. 3 fails to disclose or suggest that the followers means should be inserted into the clamping member as recited in claim 1 and that the wedge means should be formed with an open channel means for receiving the planar edge portions of the follower. These features, while seemingly simple, are the crux of the invention defined by this claim. That is, the substantially increased utility of the present invention over the device of FIG. 3 depends upon these features.

Id. at 13. In response to the examiner's rejection of claim 16, Plaintiff argued that claim 16 patentably distinguishes over the teachings of FIG. 3 for the following three reasons: (1) the follower means are insertable into the clamping band rather than welded on the ends as taught by FIG. 3; (2) the integral wedge means are deformable to conform its surface to the nominal radius of the clamping band, whereas the driving wedges of FIG. 3, once formed, were not deformable; and (3) the fastening arrangement of FIG. 3 does not disclose compression means having first and

13

second components loosely captured by the saddle means in the first and second wedge means.  Id. at 11.

In a final Office Action, the patent examiner withdrew the rejection of claim 1 based on obviousness, and the rejection of claim 16 based on anticipation.  Reinemann Decl., Ex. M.  However, the examiner maintained the rejection of claims 1, 16 and 25 as being unclear because the Plaintiff's use of the term "integral" implied that the "means" are connected to or are a part of something else.  Reinemann Decl., Ex. M at 2.  The examiner suggested that the term "integral" be deleted in all instances to avoid confusion.  Id.

The Plaintiff submitted a Response to Final Office Action Under 37 C.F.R. 116 Expedited Procedure in which it deleted the term "integral" from the elements of claims 1, 16 and 25.  Reinemann Decl., Ex. N at 9.  The examiner then issued a Notice of Allowance and Issue Fee Due.  Reinemann Decl., Ex. O.  The '459 patent issued thereafter.

II.  The Accused Device

Plaintiff contends that certain devices manufactured by Defendant infringe claim 25, and certain dependent claims, under the doctrine of equivalents.  Defendant's wedge style connector,

14

the accused device, includes an expansion means having a first and second follower, each follower having a shank portion for being inserted along the center line of a clamping band into a corresponding end section of the band and having an outer surface that corresponds to the nominal radius of curvature. The accused device has a first and second plastic wedge, each wedge having an outer surface that corresponds to the nominal radius of curvature and a compression means. The bands of the accused device are used and sold with a rubber connector boot with first and second circular ends. Additionally, the plastic wedges and the head portion of the followers are generally trapezoidal in shape.

Plaintiff admits that the accused device does not literally infringe any claim of the '459 patent because the accused device does not have tongues on its followers or grooves on its wedges. Rather, Plaintiff alleges that the accused device has plastic wedges with divergent planar edge portions and first and second followers that have grooves that perform substantially the same function, in substantially the same way, and achieve substantially the same result as the wedge and follower structure recited by claim 25 of the '459 patent.

III. Relevant Patent Claims

Plaintiff informed the Defendant through counsel that it only intends to assert infringement of claims 25, 26, 27, 29 and 30-37 in this litigation.[4] Owen Aff., Ex. 1. While Plaintiff's counsel noted in a letter that Plaintiff's position was "without prejudice or admission," in response to the instant motion Plaintiff states definitively that claim 1, and its dependent claims, are not at issue in this lawsuit. See Pl.'s Mem. of Law In Support of Its Objection at 2, and 3 n.2.

Defendant urges the Court to consider the prosecution history of claim 1, even though that claim is no longer at issue. Defendant argues that prosecution history estoppel applies to claim 25 because Plaintiff used the same narrowing language in claim 25 that it added to claim 1 in order to overcome a patent

---

[4]Of the claims that Plaintiff initially asserted, only claims 1 and 25 are independent claims. "An independent claim does not refer to any other claim of the patent and is read separately to determine its scope." Jeneric/Pentron, Inc. v. Dillon Co., Inc., No. 3:98-CV-818 (EBB), 1999 WL 66537 at *9 (D. Conn. Feb. 3, 1999). In contrast, a dependent claim "refers to at least one other claim in the patent, includes all of the limitations of the claim to which it refers, and specifies a further limitation on that claim." Id. A dependent claim is necessarily narrower than the independent claim upon which it relies. Id. If an accused device does not infringe an independent claim then it does not infringe a claim that is dependent on that claim. See Wolverine World Wide, Inc. v. Nike, Inc., 38 F.3d 1192, 1199 (Fed. Cir. 1994).

examiner's rejection based upon the prior art.  In its response, Plaintiff argues that the limiting elements in claim 1 cited by Defendant did not relate to the patentability of either claim 1 or claim 25.  Therefore, Plaintiff argues that prosecution history estoppel does not apply.  In arguing its position, Plaintiff at times refers to the prosecution history of claim 16 which, like claim 1, is also not at issue.[5]

Discussion

I.   Infringement Under the Doctrine of Equivalents

For an accused device to infringe a patent claim, it must include each and every element that is recited in the asserted claim either literally or equivalently.  Beckson Marine, Inc. v. NFM, Inc., 292 F.3d 718, 724 (Fed. Cir. 2002).  To literally infringe a patent, the accused device must include each and every element of at least one claim.  Desper Prods., Inc. v. QSound Labs., Inc., 157 F.3d 1325, 1337 (Fed. Cir. 1998).  In this case, the Plaintiff concedes that the Defendant's device does not literally infringe the '459 patent.

An accused device that does not literally infringe may still be found to infringe under the doctrine of equivalents if each

---

[5]The complete text of claims 1, 16, and 25 is cited in an appendix to this Order.

element of the claim is met either literally or equivalently. Warner-Jenkinson Co. v. Hilton Davis Chem. Co., 520 U.S. 17, 40 (1997). In some instances, however, a patent holder's ability to assert a doctrine of equivalents infringement may be precluded by the rule of prosecution history estoppel. Prosecution history estoppel limits the doctrine of equivalents "by denying equivalents to a claim limitation whose scope was narrowed during prosecution for reasons related to patentability." Pioneer Magnetics, Inc. v. Micro Linear Corp., 330 F.3d 1352, 1356 (Fed. Cir. 2003). Prosecution history estoppel was established "to hold the inventor to the representations made during the application process and to inferences that may reasonably be drawn from the amendment." Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., 535 U.S. 722, 737-738 (2002) ("Festo VIII"). "By amending the application, the inventor is deemed to concede that the patent does not extend as far as the original claim." Id. at 738. Moreover, "[a] patentee who narrows a claim as a condition for obtaining a patent disavows his claim to the broader subject matter, whether the amendment was made to avoid the prior art or to comply with § 112." Id. Whether prosecution history applies is a question of law. Festo Corp. v. Shoketsu Kinzoku Kogyo

18

Kabushiki Co., 344 F.3d 1359, 1367-68 (Fed. Cir. 2003) ("Festo IX"); Pioneer Magnetics, 330 F.3d at 1356.

This Court must first decide, then, whether Plaintiff is estopped from asserting that the accused device infringes claim 25 of the '459 patent under the doctrine of equivalents. "[W]here the claims do not 'read on' the accused structure 'to establish literal infringement' and a prosecution history estoppel makes clear that no actual infringement under the doctrine of equivalents can be found'" summary judgment should be granted for the alleged infringer. Townsend Eng'g Co. v. Hitec Co., 829 F.2d 1086, 1089 (Fed. Cir. 1987) (quoting Brenner v. U.S., 773 F.2d 306, 307 (Fed. Cir. 1985)).

Prosecution history estoppel imposes a rebuttable presumption that the doctrine of equivalents is unavailable for a particular limitation. Festo VIII, 535 U.S. at 737. A plaintiff's assertion of infringement of a claim under the doctrine of equivalents will be foreclosed if the prosecution history establishes three elements: (1) an amendment narrowed the literal scope of the claim; (2) the amendment was for a substantial reason related to patentability; and (3) the plaintiff surrendered all subject matter between the original

19

claim limitation and the amended claim limitation. <u>Festo IX</u>, 344 F.3d at 1366.

If the claim at issue has been narrowed by amendment, the patent holder has the burden to establish that the reason for the amendment was not one related to patentability. <u>Pioneer Magnetics</u>, 330 F.3d at 1356. If the prosecution history does not establish the reasons for an amendment, it is rebuttably presumed under the Supreme Court's holding in <u>Warner-Jenkinson</u> to relate to patentability. <u>Id.</u>; <u>see also</u> <u>Festo IX</u>, 344 F.3d at 1366. The patentee again has the burden of overcoming the presumption with a showing that the reason for the amendment was not one relating to patentability. <u>Festo IX</u>, 344 F.3d at 1367. The patentee must make this showing with evidence contained in the prosecution history record. <u>Id.</u> If the patentee demonstrates that the amendment was not made for a reason relating to patentability, then prosecution history estoppel does not apply. <u>Id.</u>

If the court finds that the patentee made a narrowing amendment for a substantial reason relating to patentability, the court must then address the scope of the subject matter surrendered by the narrowing amendment. <u>Festo IX</u>, 344 F.3d at 1367. Here again, a rebuttable presumption applies. "<u>Festo VIII</u>

20

imposes the presumption that the patentee has surrendered all territory between the original claim limitation and the amended claim limitation." Id. The Supreme Court identified three ways that this rebuttable presumption may be overcome. Thus, the presumption may be overcome if the patentee demonstrates: (1) that the alleged equivalent was unforeseeable at the time of the narrowing amendment, or (2) bore no more than a tangential relation to the equivalent, or (3) that there was some other reason the patentee could not have been expected to describe the alleged equivalent. Festo VIII, 535 U.S. at 740-41. If the patentee succeeds in rebutting the presumption, the case will continue; if the patentee is unsuccessful, then prosecution history estoppel will prevent any claim of infringement under the doctrine of equivalents. Festo IX, 344 F.3d at 1367.

II. Whether Plaintiff's Infringement Claim Is Estopped

    A.    Narrowing Amendments in the Parent Application

Central to resolving the instant motion is the determination of the relevant narrowing amendment. Defendant argues that, in response to an examiner's action rejecting all of the then pending claims based on the prior art, Plaintiff narrowed the scope of original claim 1 in the Parent Application to

21

specifically require that planar edge portions be located on the followers, and that the grooves be located on the wedges. Plaintiff argues, however, that the pertinent narrowing amendment in the Parent Application dealt with deformable planar followers that had planar edges to make them "deformable."

Original claim 1 of the Parent Application provided that the expansions means had:

> A. <u>first and second planar follower means</u> for insertion in the first and second end sections, respectively, along the center line, <u>each of said follower means having edges</u> that diverge with respect to the center line,
>
> B. <u>first and second wedge means</u> lying along an axis that is transverse to the center line for controlling the separation of said follower means, each of said first and second wedge means being spaced from the center line and <u>having edge means</u> that diverge with respect to the transverse axis and spaced saddle means located along the transverse axis, . . .

Reinemann Decl., Ex. C. at 15 (emphasis added). After that claim was rejected by the patent examiner, Plaintiff rewrote claim 1 in claims 18 and 19:

> A. <u>first and second integral, thin planar follower means</u> each having a shank portion for being inserted along the center line into an end section of the clamping band and a trapezoidal head portion with a base that overlies the end section and with the divergent <u>planar edge portions</u> constituting the sides of the trapezoid, <u>each said follower means being deformable to conform to a radius of curvature along</u>

22

the center line corresponding to the nominal radius of curvature whereby said follower means can conform to the profile of the clamping member,

B. first and second integral wedge means lying along an axis that is transverse to the center line for controlling the separation of said follower means, each of said first and second wedge means being spaced from the center line, having U-shaped edge means that diverge with respect to the transverse axis and that parallel said follower means edge portions for engaging said edge portions and having spaced saddle means located along the transverse axis and each said wedge means being deformable to conform to a radius of curvature about the transverse axis corresponding to the nominal radius of curvature whereby said wedge means can conform to the profile of the clamping member, . . .

Reinemann Decl., Ex. F. (emphasis added). Thus, claims 18 and 19 included limiting elements specifying "planar edge portions," located on the followers, and "U-shaped edge means," located on the wedges. Id. Additionally, the claims 18 and 19 also included limiting elements specifying that the follower means are "deformable to conform to a radius of curvature along the center line." Id. Upon review of claims 18 and 19, the examiner agreed that they overcame the prior art of record, but he did not specify the rationale supporting that conclusion. Id.

In the Court's view, the record supports a finding that the language cited by both parties narrowed the literal scope of claims 18 and 19. Plaintiff has not cited any persuasive

23

evidence from the prosecution history record to rebut the presumption that the inclusion of the limiting elements specifying the inclusion of planar edge portions on the followers and U-shaped edge means on the wedges was an amendment to claims 18 and 19 narrowing their scope to overcome the patent examiner's rejection of original claim 1. Plaintiff's contention that the limiting element that is the pertinent narrowing amendment here, namely that the followers are "deformable to conform its outer surface to a radius corresponding to the nominal radius of curvature," is inapposite. That limitation appears only in claim 16 of the '459 patent, which is not at issue.

The Court further finds that the relevant narrowing amendment to claims 18 and 19 is included in claim 25 of the '459 patent. Claim 25 provides that the followers have "divergent planar edge portions constituting the sides of the trapezoid, each of said edge portions including a tongue extending therefrom." '459 patent, Col. 14, lines 63-68, Col. 15, lines 1-5. Claim 25 further provides that the plastic wedges have "outwardly facing grooves for receiving said tongues." '459 patent, Col. 15, lines 6-19. Plaintiff used the exact same "planar edge portions" language as an element of the follower

means in the narrowing amendment to claims 18 and 19, and in claims 1 and 25 of the '459 Patent.  Plaintiff has not made any persuasive argument that the differing language used to describe the channel element of the wedge means -- "U-shaped edge means" in claims 18 and 19, "outwardly facing open channel" in claim 1 of the '459 patent, and "outwardly facing grooves" in claim 25 of the '459 patent, are distinguishable.  In any event, Plaintiff does not dispute that prosecution history estoppel is not concerned with the particular language chosen by the patentee for different claims but with comparing the original claim scope with the scope of the amended or newly added claims.  Festo IX, 344 F.3d at 1366.  Accordingly, the Court finds that the narrowing amendment at issue used in claims 18 and 19 was also used in claim 25 of the '459 patent.

B.   Whether Claim 25 Was Amended for a Substantial Reason Relating to Patentability

Defendant argues that prosecution history estoppel applies to claim 25 of the '459 patent because Plaintiff used the same language in claim 25 that it used in claims 18 and 19, and in claim 1 of the '459 patent, in order to overcome a rejection based upon the prior art.  The prosecution history record, and the relevant authorities, supports Defendant's argument.

The Court has already found that the narrowing limitation at issue was added to claims 18 and 19 to overcome the examiner's rejection based upon the prior art. Despite Plaintiff's argument to the contrary, the Court further finds that the narrowing amendment at issue was clearly material to the patentability of claim 1 of the '459 patent. The patent examiner rejected claim 1 of the CIP Application, which included the narrowing amendment at issue, based on obviousness in light of the prior art. In so doing, the examiner explained that:

> The fig. 3 clamping system illustrates <u>all the features</u> of the present invention <u>except</u> the channels are on the follower means and not the wedge means. It would have been obvious to one of ordinary skill in the art at the time the invention was made to switch the channels from the follower means to edge means as such is considered to be a mere reversal of parts which does not patentably define over the prior art of record since no new or unexpected results occur from moving the channels from the follower means to the wedge means.

Reienmann Decl. Ex. K at 3 (emphasis added). In its response to the examiner arguing for the patentability of claim 1 of the CIP Application, Plaintiff asserted that the prior art failed to disclose or suggest: (1) "that the followers means should be inserted into the clamping member" and (2) "that the wedge means should be formed with an open channel means for receiving the planar edge portions of the followers." Plaintiff then stated

26

that "[t]hese features, while seemingly simple, are the crux of the invention defined by this claim." Reinemann Decl., Ex. L at 13 (emphasis added). The examiner subsequently withdrew his objection to claim 1 of the CIP on the basis of obviousness.

Despite having stated categorically that the limitation that the wedge means should be formed with an open channel means was "the crux of the invention," Plaintiff now contends that it is not possible to discern why the examiner withdrew the obviousness objection because the examiner did not state his reasoning in the record. Plaintiff asserts that it also gave the examiner additional reasons why claim 1 of the CIP Application was patentable. Thus, Plaintiff argues, the Court may not find that the limitation specifying that the wedge means have an open channel means was added for a substantial reason relating to the patentability of claim 1 of the '459 patent.

The Court rejects Plaintiff's argument. If prosecution history estoppel means anything, a party simply cannot argue to a patent examiner in order to overcome a rejection that a particular configuration on a device "the crux"[6] of the invention

----

[6]See e.g., Webster's New World College Dictionary 334 (3d ed. 1996) (defining the term "crux" as "the essential or deciding point.").

defined by the claim, and then later assert in litigation that the same configuration is not material to that claim's patentability. The only reasonable inference that may be drawn from the record is that the examiner withdrew his objection that "switch[ing] the channels from the follower means to edge means" is "a mere reversal of parts which does not patentably define over the prior art," because of Plaintiff's argument to the contrary. Accordingly, the Court finds that the addition of the narrowing amendment to claims 18 and 19 to claim 1 of the CIP Application was material to the patentability of claim 1.

The relevant authorities further support a finding that prosecution history estoppel arises with regard to claim 25 where, as here, the Plaintiff used the same narrowing language in claim 25 that was added to an earlier claim to avoid prior art. In <u>Builders Concrete, Inc. v. Bremerton Concrete Prods. Co.</u>, 757 F.2d 255 (Fed. Cir. 1985), the court held that prosecution history estoppel applied to an independent claim that was not amended during prosecution because it contained the same clause as another claim that was subject to a narrowing amendment in response to a patent examiner's rejection. Notably, the Federal Circuit stated in <u>Builders Concrete</u>:

28

> Although claim 10 is the only claim in suit, the prosecution history <u>of all claims</u> is not insulated from review in connection with determining the fair scope of claim 10. To hold otherwise would be to exalt form over substance and distort the logic of this jurisprudence, which serves as an effective and useful guide to the understanding of patent claims. The fact that the "passage" clause of patent claim 10 was not itself amended during prosecution does not mean that it can be extended by the doctrine of equivalents to cover the precise subject matter that was relinquished in order to obtain allowance of claim 1.

<u>Id.</u> at 260 (emphasis added). The Federal Circuit has similarly held in other cases. In <u>Deering Precision Instruments, L.L.C. v. Vector Distrib. Sys.,</u>, 347 F.3d 1314 (Fed. Cir. 2003), for instance, the court held that prosecution history estoppel applied to independent claim 4 of the patent in suit even though claim 4 was never amended during prosecution, because it contained the same limitation that was added to claim 1 to obtain allowance of claim 1. <u>Id.</u> at 1326; <u>see also</u> <u>Bai v. L & L Wings, Inc.</u> 160 F.3d 1350, 1356 (Fed. Cir. 1998) (finding that a patent applicant may not amend a claim in response to an examiner's prior art rejection, and then later challenge its necessity in a subsequent infringement action on the allowed claim).

This District Court has also decided the issue presented in this case adversely to the Plaintiff's position. In <u>Leoutsakos v. Coll's Hosp. Pharm., Inc.,</u> No. Civ. 00-356-M, 2002 WL 126608

29

(D.N.H. Jan. 17, 2002), the patentee sued the defendants alleging

infringement of a patent for a support apparatus that assists

persons with impaired mobility to get in and out of bed.  Id. at

*1.  Claim 1 of the original patent application recited as one of

its elements a "means to attach [a] tubular member."  In response

to a rejection by the patent examiner, the patentee rewrote this

element of claim 1 to recite a "detachable means to attach [a]

tubular member."  Since the accused device included a welded

tubular member, the patentee conceded that it did not literally

infringe his patent.  Still, the patentee asserted an

infringement claim based on the doctrine of equivalents.  The

court granted the defendant's motion for summary judgment finding

that:

> the prosecution history demonstrates that claim one was
> narrowed, to exclude any means of attachment other than
> detachable amendment, for reasons related to
> patentability.  Accordingly, the doctrine of
> prosecution history estoppel bars [the plaintiff] from
> claiming non-detachable attachment, such as welding, as
> an equivalent of the detachable attachment disclosed in
> the [patent in suit].

Id. at *9.

In another case decided in this District Court, Heidelberg

Harris, Inc. v. MAN Roland, Inc., No. C-95-309-B, slip. op. at 1

(D.N.H. Mar. 25, 1998), the plaintiff sued the defendant seeking

30

a declaration that its off-set printing press did not infringe the defendant's patent. One of the claim elements of the patent in suit described a print cylinder component as being "a cylindrical rotating body." When the patentee first filed the patent application, however, the claim simply described the print cylinder as a "rotating body." It was only after the patent application was twice rejected based on the prior art that the inventor amended this element by adding the term "cylindrical." The Court found that the prosecution history record demonstrated that the patentee's claim was limited to having a "cylindrical" print cylinder so as to patentably distinguish it over the prior art, which showed print cylinders having clamping channels. Id. at 23-24. While the plaintiff's print cylinder included a clamping channel like the prior art, the patentee argued that the plaintiff's device infringed under the doctrine of equivalents. The court disagreed. The Court held that the patentee was precluded as a matter of law through prosecution history estoppel from relying on the doctrine of equivalents to recapture what it had given up during prosecution of the patent. Id. at 24-26. The Court finds that the holdings of Builders Concrete, Deering, Leoutsakos, and Heidelberg Harris support a finding that because

31

Plaintiff included the limiting elements at issue in claim 25 of the CIP Application, Plaintiff thereby narrowed the scope of claim 25 of the '459 patent.

The case of Al-Site Corp. v. VSI Intern., Inc., 174 F.3d 1308 (Fed. Cir. 1999), cited by the Plaintiff, is inapposite because, unlike in Al-Site, here the Court finds that claim 25 of the '459 patent includes a narrowing limitation that was added to claims 18 and 19 of the Parent Application in order to overcome the examiner's rejection. See Cummins-Allison Corp. v. Glory Ltd., No. 02 C 7008, 2003 WL 355470 at *18-19 (N.D. Ill. Fed. 12, 2003) (distinguishing Al-Site where the patent claim at issue included the same, although not identical, narrowing limitation). That claim 25 does not also include another narrowing amendment to claims 18 and 19 of the Parent Application, namely the specification of the deformability of the followers, does not change the result.

Plaintiff further argues that while claim 25 was amended once, that amendment was not for a substantial reason relating to patentability, and that the narrowing amendment to claims 18 and 19, included in claim 25, was not material to the patentability of claim 25. These additional arguments are unpersuasive.

32

For purposes of the instant motion, Defendant does not challenge Plaintiff's contention that the amendment to claim 25 deleting the word "integral" was not made for a substantial reason relating to patentability. Therefore, the Court need not further consider the significance of that amendment.

Returning to the materiality to claim 25 of the narrowing amendment made to claims 18 and 19, Plaintiff points out that both claims 1 and 25 of the CIP Application included the narrowing amendment, but claim 1 was rejected based on obviousness while claim 25 was not. Therefore, Plaintiff argues, the narrowing amendment at issue was not material to the patentability of claim 25. This argument is without merit.

The examiner found that the prior art illustrates <u>all</u> of the features of claim 1 <u>except</u> for the reversal of the locations of the tongues and the grooves. The patent examiner did not make the same finding with regard to claim 25. Therefore, that the patent examiner did not reject claim 25 of the CIP Application based on obviousness. However, this distinction between claim 1 and claim 25 has no bearing on whether the narrowing amendment at issue was material to the patentability of claim 25.

Plaintiff further argues that the prosecution history of

claim 16, an independent claim that issued without the narrowing amendment at issue, shows that the narrowing amendment was not material to the patentability of claim 25. Plaintiff asserts correctly that claim 16 does not specify the inclusion on the wedge means of U-shaped edge means (as stated in claims 18 and 19), outwardly facing open channels (as stated in claim 1 of the '459 patent), or outwardly facing grooves (as stated in claim 25 of the '459). However, Plaintiff's argument that the issuance of claim 16 supports a finding that claim 25 had features that would have made it allowable over the prior art even without the narrowing amendment does not follow.

The prosecution history record shows that the examiner must have found that claim 16 had patentable features without the narrowing amendment at issue. After the examiner rejected claim 16 of the CIP Application based on anticipation by the prior art, Plaintiff argued in response that claim 16 patentably distinguishes over the teachings of the prior art for the following three reasons: (1) the follower means are insertable into the clamping band rather than welded on the ends as taught by the prior art; (2) the integral wedge means are deformable to conform its surface to the nominal radius of the clamping band,

34

whereas the driving wedges of the prior art, once formed, were not deformable; and (3) the fastening arrangement of the prior art does not disclose compression means having first and second components loosely captured by the saddle means in the first and second wedge means. Reinemann Decl., Ex. L at 11.[7]

After considering Plaintiff's argument, the examiner withdrew the rejection of claim 16. There is no similar support for the patentability of claim 25. Rather, the record supports the inference that had the Plaintiff not included the narrowing amendment claim 25 would have been rejected.

Each time Plaintiff presented a claim to the patent examiner that did not include the narrowing amendment at issue the examiner rejected it. In the Parent Application and the Continuation Application Plaintiff recited claims providing that the wedges had "edge means." Those claims were rejected. When Plaintiff subsequently presented claim 16 of the CIP Application, also without specifying that the wedges had channels or grooves,

_____

[7]The limiting elements that the wedgee are "deformable to conform to its outer surface to a radius corresponding to the nominal radius of curvature" and that wedges have "saddle means located along the transverse axis" was included in the narrowing amendment that Plaintiff first presented in claims 18 and 19 to overcome the patent examiner's rejection of original claim 1 of the Parent Application based on anticipation.

that claim too was rejected.  It was not until after Plaintiff argued to the examiner for the patentability of claim 16, highlighting features that were included in claims 18 and 19, which had been found allowable, that the objection to claim 16 was withdrawn.  Given this history, the Court finds that the allowance of claim 16 without the narrowing amendment at issue does not support a finding that the narrowing amendment at issue was not material to the patentability of claim 25.

C.    Surrender of all Subject Matter Between the Original Claim Limitation and the Amended Claim Limitation

To overcome the presumption that Plaintiff has surrendered the entire range of equivalents by adding the narrowing amendment at issue to claim 25, Plaintiff bears the burden of proving that, at the time the amendment was made, one skilled in the art could not reasonably be expected to have drafted a claim that would have literally encompassed the alleged equivalent. Festo VIII, 535 U.S. at 741.  Plaintiff may meet this burden by showing: (1) the alleged equivalent was unforeseeable at the time of the amendment to one of ordinary skill in the art; (2) the rationale for the amendment bears only a tangential relation to the alleged equivalent; or (3) there was some "other reason" such that the patentee could not reasonably have been expected to have

described the alleged equivalent.  Id. at 740-41.

Plaintiff fails to rebut the presumption that it surrendered all subject matter between the original limitation in claim 1 of the Parent Application and the amended claim limitation in claims 18 and 19 because none of the three exceptions to the presumption of surrender applies here.  First, the prior art wedge expander used the same configuration employed in the accused device. "[I]f the alleged equivalent were known in the prior art in the field of the invention, it certainly should have been foreseeable at the time of the amendment."  Festo IX, 344 F.3d at 1369. Second, Plaintiff has not established that the narrowing amendment at issue bore only a tangential relationship to the alleged equivalent.  The Court has found that the narrowing amendment at issue was made to avoid prior art that contains the equivalent in question.  Therefore, it cannot be considered tangential.  Id.  And third, Plaintiff has not demonstrated that there was any "other reason," it could not reasonably have been expected to have described the alleged equivalent.  Therefore, the Court finds that prosecution history estoppel bars Plaintiff's infringement claim against the Defendant of claim 25 of the '459 patent, and its dependent claims, under the doctrine

of equivalents.  Accordingly, the Court finds that the Defendant is entitled to summary judgment of noninfringement.

Conclusion

For the reasons set forth above, Defendant's motion for summary judgment (document no. 37) is granted.  The Clerk of Court is directed to enter judgment in favor of the Defendant and close the case.

**SO ORDERED.**

_____
James R. Muirhead
United States Magistrate Judge

Date: September 28, 2004

cc:  Michael R. Reinemann, Esq.
     Robert W. Upton II, Esq.
     Arnold Rosenblatt, Esq.
     Daniel Bourque, Esq.

The following is the text of the claims in United States Patent No. 5,431,459 cited in the Court's Order.

   1.   Claim 1

The text of claim 1, as recited in the '459 patent, provides that what is claimed as new and desired is:

1. In a system for clamping a flexible pipe connector to a pipe wall including a clamping member with a nominal radius of curvature and an outer surface for engaging the pipe connector and spaced first and second end sections that align along a circumferential center line, the improvement of expansion means for altering the separation between the first and second end sections thereby to alter the radius of curvature of the clamping member, said expansion means comprising:

   A. first follower means and second follower means each having a shank portion for being inserted along the center line into a corresponding end section of the clamping member and a trapezoidal head portion with a base for overlying the end section and with divergent planar edge portions constituting the sides of the trapezoid, each said follower means having an outer surface that corresponds to the nominal radius of curvature,

   B. first wedge means and second wedge means adapted for lying in a spaced relationship along an axis that is transverse to the center line to control the separation of said follower means, each of said first and second wedge means having a generally trapezoidal shape with edge means that diverge with respect to the transverse axis, that parallel said follower means edge portions and that terminate with outwardly facing open channel means for receiving said follower means planar edge portions, and having an

1

outer surface for disposition about the transverse axis corresponding to the nominal radius of curvature, and

    C. compression means for displacing said first and second wedge means with respect to the center line, one of said wedge means having means for receiving said compression means and the other of said wedge means including means for engaging said compression means whereby operation of said compression means changes the separation between the first and second end sections.

'459 patent, Col. 11, lines 3-41.

    2.   <u>Claim 16</u>

The text of claim 16, as recited in the '459 patent,

provides that what is claimed as new and desired is:

16. In a system for clamping a pipe to a manhole riser at an opening through a wall thereof including a flexible connector boot with a first circular end portion for insertion in the opening to be coextensive with portions of the manhole riser wall and a second circular end portion for receiving the pipe and a clamping band having a profile with a nominal radius of curvature and an outer surface for engaging the first circular end portion along a circumferentially extending center line and having spaced first and second end sections, the improvement of expansion means for altering the separation between the first and second sections thereby to produce a sealing force that effects a seal between said first circular end portion and the wall of the manhole riser, said expansion means including:

    A. first planar metal follower means and second planar metal follower means each having a shank portion for being inserted along the center line into an end section of the clamping band and a trapezoidal head portion with a base for overlying the end section and with divergent planar edge portions constituting the

2

sides of the trapezoid, each said follower means being deformable to conform its outer surface to a radius of curvature whereby said follower means can conform to the profile of the clamping band,

B. first metal wedge means and second metal wedge means adapted for lying in a spaced relationship along an axis that is transverse to the center line to control the separation of said follower means, each of said first and second wedge means having a generally trapezoidal shape and having;

i. edge means that diverge with respect to the transverse axis and that parallel said follower means edge portions for engaging said edge portions, and

ii. saddle means located along the transverse axis, each of said wedge means being deformable to conform its outer surface to a radius corresponding to the nominal radius of curvature whereby said wedge means can conform to the profile of the clamping band, and

C. compression means having first and second separable components loosely captured by said saddle means in said first and second wedge means respectively for displacing said wedge means with respect to the center line whereby said adjacent divergent edge means on said wedge means engage proximate ones of said planar edge portions on said follower means for increasing the separation between the first and second end sections as said compression means displaces said wedge means toward the center line thereby to cause said clamping band to seal said first circular end portion of said connector boot against the manhole riser.

3.   Claim 25

The text of claim 25, as recited in the '459 patent,

3

provides that what is claimed as new and desired is:

25. In a system for clamping a pipe to a manhole riser at an opening through a wall thereof including a flexible connector boot with a first circular end portion for insertion in the opening to be coextensive with portions of the manhole riser wall and a second circular end portion for receiving the pipe and a clamping member having a profile and with a nominal radius of curvature and an outer surface for engaging the first end portion along a circumferentially extending center line and having spaced first and second end sections, the improvement of expansion means for altering the separation between the first and second end section thereby to alter the radius of curvature of the clamping member, said expansion means comprising:

A. first follower means and second follower means each having a shank portion for being inserted along the center line into a corresponding end section of the clamping member and a trapezoidal head portion with a base that overlies the end section and with divergent planar edge portions constituting the sides of the trapezoid, each of said edge portions including a tongue extending therefrom and each of said follower means having an outer surface that corresponds to the nominal radius of curvature.

B. first plastic wedge means and second plastic wedge means adapted for lying, in a spaced relationship along an axis that is transverse to the center line to control the separation of said follower means, each of said first and second wedge means having a generally trapezoidal shape with edge means that diverge with respect to the transverse axis, that parallel said follower means edge portions and that terminate with outwardly facing grooves for receiving said tongues on said follower means and having an outer surface for disposition about the transverse axis that corresponds to the nominal radius of curvature, and

C. compression means for alignment along the

4

transverse axis and for displacing said first and second wedge means with respect to the center line, each of said wedge means including means for engaging said compression means whereby operation of said compression means changes the separation between the first and second end sections of the clamping member.

'459 patent, Col. 14, lines 49-68, Col. 15, lines 1-27.

5