Defendant seeks summary judgment of non-infringement of the '083 patent and U.S. Patent Nos. 8,822,148 ("the '148 patent") and 7,129,091 ("the '091 patent"). (See D.I. 243). It further seeks summary judgment of invalidity of claim 1 of the '407 patent. (See id. ).
1. Non-Infringement of the '083 Patent
Defendant argues there is no dispute its microfluidic chips do not literally infringe the '083 patent because they contain fluorine. (See id. at 10). In other words, they do not meet the patent's requirement of a "non-flourinated microchannel." As Defendant points out, I previously construed "non-flourinated microchannel" to mean, "microchannel that is not composed of a material that includes fluorine atoms or that is treated to include fluorine atoms at its surface (excluding the possible inclusion of impurities or contaminants)." (D.I. 116 at 16).
Defendant maintains, "To eliminate any dispute over the '083 patent, 10X redesigned its microfluidic chips to include fluorine."
*542 (D.I. 243 at 10). More specifically, "as of August 2017, all current 10X products utilize microfluidic chips that include 0.02% Kynar 720 (polyvinylidene fluoride)." (Id. (citation omitted) ). According to Defendant, the fluorine in its products is not a "contaminant" or an "impurity" because Defendant "intentionally included" it in its chips. (Id. (emphasis omitted) ). As support, Defendant cites excerpts from the Markman hearing. (See id. ; see also D.I. 349 at 49:14-18).
Defendant's reliance on what I said at the Markman hearing is unavailing. During colloquy at that hearing, there was some discussion of "accidental impurities or [ ] impurities that are perhaps known to exist, but are hard to get rid of." (See D.I. 105 at 115:2-4; see also id. at 111:24-113:16). I did not define the words "impurity" or "contaminant" in my Markman opinion, however.
In any event, there seems to be a dispute as to whether the 0.02% Kynar in Defendant's products is properly understood to be an impurity or a contaminant. Defendant's expert, Dr. Huck, opines that "a person of ordinary skill in the art would not have viewed intentionally-added 0.02 % Kynar 720 as an impurity or contaminant." (D.I. 241, Exh. 2 ¶ 361). Plaintiffs' expert, Dr. Sia., on the other hand, opines, "Such a trace amount of this additive is properly characterized as no more than a 'contaminant' or an 'impurity,' which the Court's claim construction exempts." (D.I. 238, Exh. B ¶ 299). Thus, there is a genuine dispute of material fact as to whether Defendant's products literally infringe the "non-flourinated microchannel" limitation in light of the way I have construed that term.
Defendant additionally moves for summary judgment of non-infringement under the doctrine of equivalents. (See D.I. 243 at 10-15). The core of Defendant's argument is that prosecution history estoppel bars Plaintiffs from asserting infringement under that doctrine. (See id. at 10). More specifically, Defendant maintains, "The 'non-flourinated' limitation was added during prosecution of the application that resulted in the '083 patent to overcome the examiner's prior art rejection." (Id. at 11). It argues "the presumption of total surrender clearly applies" because the "non-flourinated amendment narrowed the literal scope of the claim by altering the claimed subject matter from encompassing all types of microchannels to only non-flourinated microchannels." (Id. at 12 (emphasis omitted) ). Defendant contends that Plaintiffs have failed to rebut that presumption. (Id. at 13).
I disagree.
Under the Festo doctrine, the presumption that the patentee "surrendered all territory between the original claim limitation and the amended claim limitation" applies where the amendment "narrowed the literal scope of a claim" and was "made for a substantial reason relating to patentability." Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co. , 344 F.3d 1359, 1366-67 (Fed. Cir. 2003). The patentee may overcome the presumption of total surrender in three ways. Id. at 1368. "Specifically, the patentee must demonstrate that the alleged equivalent would have been unforeseeable at the time of the narrowing amendment, that the rationale underlying the narrowing amendment bore no more than a tangential relation to the equivalent in question, or that there was 'some other reason' suggesting that the patentee could not reasonably have been expected to have described the alleged equivalent." Id. "Questions relating to the application and scope of prosecution history estoppel [ ] fall within the exclusive province of the court." Id.
Here, as a threshold matter, it seems clear to me that the presumption of total *543 surrender applies. The patentee in this case narrowed the scope of the claims by adding, among other things, the term "non-flourinated" before "microchannel" in order to overcome the patent examiner's rejection in light of prior art references Quake and Ramsey. (See D.I. 247, Exh. K, pp. 2, 7-8). Thus, the patentee narrowed the literal scope of the claims for a substantial reason relating to patentability. See Festo , 344 F.3d at 1366-67.
In my opinion, however, Plaintiffs have overcome the presumption by demonstrating that "the rationale underlying the narrowing amendment [bore] no more than a tangential relation to the equivalent in question." See id. at 1369 (alteration in original) (citation omitted). That "criterion asks whether the reason for the narrowing amendment was peripheral, or not directly relevant, to the alleged equivalent." Id. "[T]he inquiry into whether a patentee can rebut the Festo presumption under the 'tangential' criterion focuses on the patentee's objectively apparent reason for the narrowing amendment." Id. "[A]n amendment made to avoid prior art that contains the equivalent in question is not tangential; it is central to allowance of the claim." Id.
In this case, in responding to the examiner's prior art rejection and amending the claims, the patentee wrote:
Quake reports that surfactants, such as a fluorinated oil, may be used in an extrusion fluid (column 24, lines 18-20). Quake reports that the extrusion fluid may coat the channel walls (column 19, lines 9-49). Coating channel walls with an extrusion fluid that includes a fluorinated oil does not disclose or suggest the elements of the amended claims of a non-flourinated microchannel, and a carrier fluid including a fluorinated oil and a fluorinated surfactant having a hydrophilic head group in the microchannel.
(D.I. 247, Exh. K, pp. 7-8).
It seems clear to me that the patentee, by amending the claims to require "a non-flourinated microchannel," sought to distinguish the "microchannel" in its system from the channels described in Quake, which may be "coated with ... surfactants, TEFLON, or fluorinated oils" (id. , Exh. A ¶ 118) in order to "prevent material ... from adhering to the sides of the channels" (id. ¶ 94). In other words, I think what Plaintiffs surrendered through their amendment are "microchannel[s]" "coated" with fluorine for a purpose-not those containing de minimis amounts of fluorine that have no effect on how the "microchannel" functions in the system. Nowhere in the Quake reference do I see the equivalent in question. Because I conclude the reasons for the amendment bore no more than a tangential relation to the equivalent at issue, I need not address Plaintiffs' argument that the equivalent was not foreseeable at the time of the amendment. (See D.I. 263 at 13).
Defendant additionally argues, "Even if the Court were to find that prosecution history does not apply, Plaintiffs still would be barred by the principle of 'specific exclusion' from arguing infringement under the [doctrine of equivalents]." (D.I. 243 at 14).
Under Federal Circuit law, a patentee is barred from asserting infringement under the doctrine of equivalents where the patentee "defin[es] the claim in a way that clearly exclude[s] certain subject matter, [thereby] ... implicitly disclaim[ing] the subject matter that was excluded." SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc. , 242 F.3d 1337, 1346 (Fed. Cir. 2001). Thus, as the Federal Circuit has explained, "if a patent states that the claimed device *544 must be 'non-metallic,' the patentee cannot assert the patent against a metallic device on the ground that a metallic device is equivalent to a non-metallic device." Id. at 1347.
Accordingly, Plaintiffs may not assert the '083 patent, which claims a "non-flourinated microchannel," against a product containing a "fluorinated microchannel." As discussed above, however, there is a dispute of material fact as to whether the microchannels in Defendant's products are properly understood to be "fluorinated."
Finally, Defendant argues its products do not infringe the '083 patent because they "lack[ ] a 'plug-fluid/microchannel wall interface,' as required by the claims." (D.I. 243 at 15). According to Defendant, "Because the droplets formed in 10X's systems are completely surrounded by oil, the droplets ... never touch the microchannel wall." (Id. (citation omitted) ). Plaintiffs respond, "Nothing in the claims of the '083 patent requires the plug-fluid to be in actual physical contact with the microchannel walls." (D.I. 263 at 14).
I agree with Plaintiffs.
As Plaintiffs point out, the claims require only that "the fluorinated surfactant is present at a concentration such that surface tension at the plug-fluid/microchannel wall interface is higher than surface tension at the plug-fluid/carrier fluid interface." ( '083 patent, 73:18-21). Thus, the focus in the claims is on the difference between the surface tensions at the two interfaces, not on any physical contact between the plug-fluid and microchannel wall or between the plug-fluid and carrier fluid. I see no support for Defendant's attempt to limit the claims so as to require direct contact. Defendant's reading is too narrow. Thus, I cannot conclude as a matter of law that Defendant's products do not infringe the '083 patent as to the "plug-fluid/microchannel wall interface" limitation in the claims.
For the reasons stated above, Defendant's motion is DENIED as to the '083 patent.
2. Non-Infringement of the '148 Patent
Defendant seeks summary judgment of non-infringement of the '148 patent.
First, Defendant seeks summary judgment of non-infringement as to its GemCode Long Read product. (See D.I. 243 at 16-17). In their opposition, Plaintiffs state they "do not dispute that under the Court's construction of the term 'target sequence,' 10X's GemCode Long Read product will not infringe the '148 patent. Plaintiffs[ ] reserve their right to challenge the Court's claim construction on appeal." (D.I. 263 at 16 n.6). Accordingly, Defendant's motion for summary judgment of non-infringement of the '148 patent is GRANTED as to its GemCode Long Read product.
Second, Defendant argues that its Chromium Genome/Exome product does not literally infringe claim 1 of the '148 patent because the "Landlord" reaction "does not include a step in which 'strands of DNA are denatured to form single-strand templates.' " (D.I. 243 at 17-18). Similarly, it argues there is no dispute its product does not infringe under the doctrine of equivalents. (Id. at 20-22). According to Defendant, "Plaintiffs have not proffered any evidence of how the results of Landlord reaction and [polymerase chain reaction ] are the same." (Id. at 21 (emphasis omitted) ).
According to Defendant's expert, Dr. Quackenbush, the Landlord reaction constitutes strand displacement, not denaturation. (D.I. 247, Exh. C ¶ 221). He opines that "displacement activity is distinct from denaturation in which heat ... is used to separate entire double-stranded DNA molecules." (Id. ¶ 223). As support, Dr. *545 Quackenbush cites various textbooks that purportedly distinguish between strand denaturation and displacement. (See id. ¶ 225). But none seem to state that strand displacement is not denaturation. Plaintiffs' expert, Dr. Sia, on the other hand, maintains that strand displacement is a form of denaturation. (See D.I. 238, Exh. B ¶¶ 253, 452, 455; see also id. ¶¶ 241-55 (explaining why Landlord is a polymerase chain reaction ) ).
I think Defendant is essentially asking that I construe what the various textbooks cited by Dr. Quackenbush say in regard to displacement and denaturation. But none of the excerpts to which he cites are directly on point. It seems to me that whether strand displacement is in fact a form of or equivalent to denaturation will be a battle of the experts at trial. Accordingly, Defendant's motion for summary judgment of non-infringement of the '148 patent is DENIED as to its Chromium Genome/Exome product.
3. Non-Infringement of the '091 Patent
Defendant argues its products do not literally infringe the '091 patent because they do not meet the requirement that "each plug comprises both the first and second plug-fluids so that the reaction of the reagents substantially occurs in the plug." (See D.I. 243 at 22 (emphasis omitted) ). According to Defendant, "there is no dispute that at least some of the GEMS formed in a 10X instrument run do not contain a gel bead," and thus a reaction does not occur in every GEM. (Id. at 23 (emphasis omitted) ). As support for its position that "each" means "each and every," Defendant cites statements I made at the Markman hearing. (Id. at 22).
In my opinion, Defendant is attempting to reargue its position from the Markman stage in regard to the meaning of the word "each." Its reliance on statements I made during the hearing is unavailing. While I declined to construe the word "each" in my Markman opinion, I stated, "I think it is apparent from the claim language that the phrase 'each plug-fluid' is not meant to include every plug-fluid in the Universe without expressly including such a limitation in the construction of this term." (D.I. 116 at 19). I found no construction was necessary for the word "each," "with the understanding that 'each' refers only to the plugs and plug-fluids in the claim at issue and not plugs and plug-fluids generally." (Id. at 19-20). Again, I decline to adopt Defendant's narrow reading of the claims.
Defendant further seeks summary judgment of non-infringement of the '091 patent under the doctrine of equivalents. (D.I. 243 at 25-26).
Having reviewed the briefing and evidence presented by the parties, I conclude there is a dispute of material fact as to whether Defendant's products infringe the '091 patent under that doctrine. (Compare D.I. 238, Exh. B (Sia Report) ¶¶ 202-03, with D.I. 247, Exh. F (Huck Report) ¶¶ 301-02). I am not persuaded by Defendant's argument that summary judgment is warranted as to infringement under the doctrine of equivalents because Dr. Sia "did not properly consider whether 10X's system was truly equivalent to the system described in the '091 patent claims." (D.I. 243 at 26).
For the reasons stated above, Defendant's motion is DENIED as to the '091 patent.
4. Anticipation of the '407 Patent
Finally, Defendant seeks summary judgment of invalidity of claim 1 of the '407 patent on the basis that the Quake reference "discloses all of the steps of claim 1." (D.I. 243 at 26-27). As support, Defendant primarily relies upon paragraph [0170] of that reference. (See id. at 33 ("The method of conducting reactions in *546 droplets described in paragraph [0170] satisfies the disputed limitations of claim 1 of the '407 patent. Accordingly, claim 1 ... is invalid as anticipated by Quake ."); see also id. at 29-32). Defendant criticizes Dr. Sia for failing to mention paragraph [0170] anywhere in his report. (Id. at 31; see D.I. 349 at 118:1-11).
Having reviewed the briefing and the evidence presented by the parties, I conclude there are material facts in dispute as to whether Quake anticipates claim 1 of the '407 patent. (Compare, e.g. , D.I. 247, Exh. X (Chang Report) ¶¶ 301-04, with, e.g. , D.I. 264, Exh. 17 (Sia Rebuttal Report) ¶¶ 87-89). I will not grant summary judgment to Defendant on the basis that Dr. Sia did not respond to Defendant's expert's discussion of paragraph [0170] buried in a 1600-page report.
Accordingly, Defendant's motion is DENIED as to the '407 patent.
IV. CONCLUSION
For the foregoing reasons, Plaintiffs' Motion for Summary Judgment (D.I. 235) is GRANTED IN PART and DENIED IN PART , and Defendant's Motion for Summary Judgment of Non-Infringement and Invalidity (D.I. 242) is GRANTED IN PART and DENIED IN PART .
It is SO ORDERED this 26 day of June 2018.